WILLIAM SKRAINKA ET AL., Appellants, *v.* AUGUSTUS OERTEL ET AL., Respondents.

December 18, 1883.

1. EQUITY — INJUNCTION. — A writ of injunction will not be issued where the result would be oppressive upon the defendant, or where the plaintiff by reason of his own acts, ought not, in good conscience, to ask it.

2. STREETS. — To constitute a public street, there must be a public user or, an acceptance in some manner by the city.

3. EASEMENT — RIGHT OF WAY. — An easement of right of way can not be claimed over land which, for twenty-five years, has been used, with the claimant's knowledge and co-operation, as a stone quarry, over which there was no way.

4. INJUNCTION — DAMAGES. — Actual loss of time to the defendant in procuring a dissolution of the temporary injunction is an element of damages recoverable on the bond.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

R. E. ROMBAUER, for the appellants: Injunction will lie to restrain an interference with a right of way.— *London M. W. R. R.* v. *Lancashire & Y. R. R. Co.*, 4 Eq. 178; *Goodson* v. *Richardson*, 9 Ch. 221; *Allen* v. *Martin*, 20 Eq. 465; *Ardley* v. *Guardians of St. Pancras*, 39 L. I. 871. The remedy must be sought while the work is unfinished, because when it has been once completed, the party must resort to an action of damages.— *Fanors* v. *Van Littart*, 1 Ra. Ca. 602; *Drere* v. *Guest*, 1 M. & C. 516; *Moreland* v. *Richardson*, 22 Beav. 604; *Camochan* v. *Norwich, S. R. Co.*, 26 Beav. 171; *Doran* v. *Carroll*, 11 Ired. Ch. 379. The only counsel fees recoverable in any event are those necessarily incurred to secure a dissolution of the injunction already granted.— *Bostmantel* v. *Stewart*, 55 Cal. 115; *Steele* v. *Thatcher*, 56 Ill. 257; *Hovey* v. *Rubber Tip Co.*, 12 Abb. Pr. (N. S.) 360.

Time lost in consultation with counsel are not proximate damages.— *Center* v. *Hoag*, 52 Vt. 401 ; *Lange* v. *Wagner*, 52 Md. 310 ; *Campbell* v. *Metcalf*, 1 Mont. Ty. 379 ; *Brown* v. *Jones*, 5 Nev. 374. Nor can any damages be recovered resulting from the fact that defendants were enjoined from committing a trespass — *Jenkins et al.* v. *Parkhill*, 25 Ind. 473, 479.

T. J. CORNELIUS, for the respondents : " An injunction should only be granted when the rights sought to be protected are clear, or at least free from reasonable doubt." — Willard's Eq. Jur. (Potter's ed.) 342 ; Hill. on Inj. (3d ed.) 19 ; Washb. on Ease. (3d ed.) 700. " He who seeks the interference of a court of equity must not come with unclean hands." — *Casseday* v. *Metcalf*, 1 Mo. App. 593. An injunction is not issued by a court of equity as a matter of right, but as a matter of grace. And " no injunction will be granted when it will operate oppressively, inequitably, or contrary to the real justice of the case." — Hill on Inj. (3d ed.) 33 ; 2 Story's Eq. Jur. (11th ed.), sect. 959, p. 169. An adverse user of the grounds subject to the easement for the period of limitation destroys the easement — Washb. on Ease. (3d. ed.) 672. One can not claim a right, the enjoyment of which he has rendered impossible by his own act. — *Taylor* v. *Hampton*, 4 McCord, 96.

BAKEWELL, J., delivered the opinion of the court

This is an application for an injunction. The plaintiffs allege that they own a lot in city block 237, bounded west by Commercial Street ; that Commercial Street runs east and west through the block, and is not a public way, but a private easement essential to the convenient use of plaintiff's property ; that defendants, from April, 1882, to the filing of the bill on the 9th of May, 1882, have quarried into Commercial Street south of and adjoining plaintiffs' property ; that this is an irreparable

injury to plaintiffs, and endangers and destroys their ease-
ment, etc.

The defendants file separate answers.   They deny that a
private way ever existed over Commercial Street, in block
237, or that their acts interfered with plaintiffs' rights.
They aver that Commercial Street in said block has been
abandoned as a way of street for twenty years, during which
period plaintiffs and the property holders in the block
quarried in Commercial Street until it is an almost ex-
hausted quarry.   They say that, by reason of these acts of
plaintiffs and others, and the representation of plaintiffs,
defendant Heman was induced to believe that all rights
of way over Commercial Street were abandoned, and, so
believing, he bought land in block 237, and expended large
sums in preparing to quarry on his said land and on
Commercial Street.   Oertel alleges that, in 1877, he owned
a strip of ground lying between the lot of plaintiff and
Labeaume Street, and became a partner of plaintiff as
quarrymen ; and that plaintiffs and he then agreed that
Commercial Street had been abandoned more than ten
years, and they quarried out all the rock on Commercial
Street from Labeaume Street south to Heman's lot, so that
plaintiffs, when they subsequently bought their lot de-
scribed in the petition, knew that there was no way over
Commercial Street.   Heman further states that he had a
license from all owners in the block, except plaintiff, to
quarry out Commercial Street, the value of which, owing
to his investments in quarry property made with knowl-
edge of plaintiffs, is $10,000.   He also alleges that the
former owners of the block, by their recorded partition,
deed, and plot, laid out Commercial Street through the
block, and that the property so marked as a street has
never been assessed for taxes.   A temporary injunction
was granted, which was dissolved on motion when the cause
was heard on its merits.   The witnesses agree as to the
material facts, which are as follows : —

Block 237 was owned in 1857 by Bogy, Page, and Benoist,

who then made partition by deed and plat duly recorded. The plat in the partition is set out below, in order to the better understanding of this statement.

**E.**
FRONT STREET.

| | | Defendant Heman's two lots, acquired March, 1881. | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | Plaintiffs' lot, acquired March, 1880. 7 | 6 | 5 | 4 | 3 | 2 | 1 |

COMMERCIAL ALLEY.

**N.** LABEAUME STREET.                    BOGY STREET. **S.**

| 9 | 10 | 11 | 12 |

MAIN STREET.
**W.**

Labeaume Street is not used as a street, but is occupied as private property. Bogy and Main Streets are macadamized streets. Front street is occupied by tracks of the K. C., N. & W. railroad and of the St. Louis Transfer Company, from the eastern line of the block to the river. The property north of lot 7, including that marked as Labeaume Street, is in possession of plaintiff. Lot 8 is owned and used by plaintiffs, and they have a lease of the

land marked Labeaume Street. Over lot 8 and the property marked Labeaume Street they have, by virtue of their present possession under lease, a way to Main Street. For the purpose of showing that the property marked Front Street is private ground plaintiff introduced a deed from Barnes and wife to Mitchell and Tansey, who are trustees of the Transfer Company, for lots 1, 2 and 3, of block 237, and the land on Front Street lying between those three lots and the river. Plaintiffs acquired lot 7 by deed dated 29th of March, 1880. It is described as bounded west by Commercial Street, and east by proposed Front Street. All the mesne conveyances from Bogy, to whom the land was assigned in partition, to plaintiffs' grantor, bound lot 7 west by Commercial Street. Heman acquired lots 5 and 6 in March, 1881, a year after the date of plaintiffs' deed. On the next day he reconveyed them to Mitchell and Tansey to hold after September 1, 1884, Heman to fill up to the grade such parts as he might quarry out, and Mitchell and Tansey to have the sole right to lay railroad tracks on the lots. It was admitted that defendants had begun to quarry, and, unless restrained, would quarry Commercial Street for a depth of fifty feet. The testimony shows that Commercial Street has been quarried by different persons from time to time since 1857, and during that time was not fit for travel, and has never been used as a thoroughfare, though it might be crossed at different points, the old quarries being from time to time filled up. There is now a gully twelve feet deep across the street in this block. Oertel testified that he bought ground in block 237, and quarried on lots 8, 9 and 10. In 1877 he formed a partnership with plaintiffs, to whom he sold a two-thirds interest in this quarry, which extended across Commercial Street. Heman had gone over his line only a foot or two on Commercial Street, but plaintiffs have quarried to a depth of sixty-three feet below Heman's lot. Heman testified that plaintiffs were quarrying right on Commercial Street in the

July and August of 1881; and that plaintiff Veiths told defendants that it was a public highway; that they had no right to quarry it, but that he alone had such right; that he had it pretty near out himself; and told every one else that it was a public highway on which they had no right to quarry.

1. The trial court dissolved the injunction, and we think that, upon the evidence, this was right. Plaintiff Veiths himself testified that it was impossible to go south on Commercial Street beyond the quarry which plaintiffs themselves had made there. Whether the street was a public street or a private way, plaintiffs made out no case for equitable relief. As to their easement of a right of way, the evidence is, that, for nearly three times the period of statutory limitation, the so-called Commercial Street has been notoriously used merely for stone quarries and dumping ground. Plaintiffs not only have had notice of this, but have contributed themselves to a use of the property that makes any right of way useless to anybody. Having themselves effectually obstructed the passage, plaintiffs have destroyed any right of way in themselves, if they ever had any. *Taylor* v. *Hampton*, 4 McCord, 96.

But if this is to be looked upon as a proceeding by one specially injured, to abate a public nuisance, then it ought to fail. The petition does not allege that Commercial Street, through block 327, is or ever was a public street. It does allege that it is not a public street. There can be no purpresture if this strip called Commercial Street is not a part of the public domain; and, were the allegations sufficiently made in the petition, the alleged purpresture must clearly appear in fact; and if it be doubtful whether there be a purpresture the relief should be withheld. *Attorney-General* v. *Railroad Co.*, 12 N. J. Eq. 1; *City* v. *Curtiss*, Clark (N. Y. Eq.) 339. In all cases of doubtful right, or remote or contingent injury, a court of chancery will wait for the right to be settled at law, or the injury to become imminent,

before it will interfere by the extraordinary process of injunction; and though, in case of direct, continuing, and permanent nuisance, equity will not compel plaintiff to resort to repeated actions at law, but will enjoin the nuisance (*Hayden* v. *Tucker*, 37 Mo. 214), yet the case must be one in which the existence of a nuisance is not doubtful.

Now, there seems to be no evidence that defendants are encroaching upon any public street. It is not enough that it appears that Commercial Street was dedicated as a street through block 327 by the owner. Labeaume Street, so far as the plat shows, is dedicated by the Benoist partition as well as Commercial Street; yet one of the grounds on which plaintiffs seek relief is that Labeaume Street is not a public street, but private property. An owner of land in the city limits does not make it a public street by mere dedication to public use. The city, we apprehend, must accept, or there must be a user by the public for the purpose of the dedication. A formal acceptance may not be necessary; but in the present case there is absolutely nothing to show any acceptance or use of Commercial Street through block 327 as a street, nor even that it corresponds with and continues the line of any city street, whilst there is evidence tending to show that from the time of the alleged dedication in the Benoist partition this pretended street has never been used as a street, but rather as a stone quarry. *Rector* v. *Hartt*, 8 Mo. 457; *Rose* v. *City*, 49 Mo. 510; *Taylor* v. *City*, 14 Mo. 20.

If Commercial Street were a public street, and their case was otherwise made out, plaintiffs might be entitled to an injunction on the ground that the injury threatened and complained of affects them in a special manner as property holders in the block. But they have themselves contributed to and set the example of the nuisance they are now seeking to abate. They themselves have obstructed, and are now obstructing, the natural outlet to Bogy Street. Nor does it appear that there is any immediate danger of irreparable

injury.   Plaintiffs have access on their own land, and on land leased by them; that is, over lot 8 and Labeaume Street, to Main Street, and over lots 10 and 11; they can also reach Main Street if they can cross Commercial Street, and if they can not cross Commercial Street, between lots 7 and 10, it is on account of the hole that they themselves have dug there.

We do not think that the circuit court, upon the evidence, was bound to maintain in force the restraining order in favor of plaintiffs, who themselves destroyed the pretended street as a way for all owners of property fronting on it, including themselves, and who have acquiesced for many years, and so long as such acquiescence furthered their private interests, in a use of the land now said by them to be a public street or a private way, for purposes utterly inconsistent with its use as a street or way.

We do not think that the statutory provision first introduced in 1865 (Rev. Stats., sect. 2722), that "the remedy by writ of injunction or prohibition shall exist in all cases where an injury to real or personal property is threatened, and to prevent the doing of any legal wrong whatever, whenever, in the opinion of the court, an adequate remedy can not be afforded by an action for damages," makes it obligatory upon the circuit court to issue the writ under circumstances where a chancellor might have properly refused it before the statutory provision.   Its effect, perhaps, has been to lead the court to look with more favor upon preventive proceedings; but the writ ought not to issue where it will work oppressively, or where the plaintiff by his own acts has put himself in a position that he ought not to ask it, as where he would enjoin the defendant from continuing a quarry on a public street, or on land over which plaintiff claims an easement of right of way, which quarry defendant opened in good faith, induced in a great measure to do so by the fact that plaintiff at the time was, and for years be-

fore had been, quarrying in the middle of the same pretended street and in the same block.

2. On the motion for assessment of damages, a jury was waived, and the finding and judgment were for $410, of which sum the court allowed $300 for counsel fees, $100 for time lost by defendants, and $10 for expenses of deeds. The court declared the law to be, that no counsel fees can be recovered as damages beyond the reasonable value of services necessary to obtain a dissolution of the injunction, and that testimony as to the value of services in resisting the original application, and of all other services, must be disregarded. The court had admitted, against the objection of plaintiffs, testimony that the reasonable value of all the services of counsel for defendant in the case was $500, which included services for resisting the original application. Plaintiffs introduced testimony tending to show that the reasonable value of the services of counsel in obtaining the dissolution was not over $250.

We see nothing in all this that calls for our interference. The court could probably judge as well as the witness what the services were worth, and it did not consider, in arriving at their value, any illegal testimony, as appears from the declaration of law. It may be, that it was difficult to present the testimony as to the value of the services of counsel without making a lumping estimate, from which the court could determine what the particular services for which plaintiffs are liable were fairly worth. The charge does not seem to be at all exorbitant; and we think there was some evidence to support the finding in this respect. We think that any actual loss of time necessarily occasioned to defendants by the proceedings, was loss and injury sustained by defendants within the meaning of the statute. It appears that there was testimony that, in consultation with counsel and collecting necessary testimony to procure a dissolution of the injunction, defendants lost time exceeding $100 in value.

We think the judgment should be affirmed. It is so ordered. All the judges concur.