REAL ESTATE INVESTMENT COMPANY, APPELLANT, v. FRANK D. WINN AND MARY WINN, RESPONDENTS.—116 S. W. (2d) 550.

Kansas City Court of Appeals. May 2, 1938.

*Harding, Murphy & Tucker* and *Alan F. Whettitt* for appellant.

*Lawson & Hale* for respondents.

REYNOLDS, J.—This appeal comes to us from the Circuit Court of Clay County.

The plaintiff, Real Estate Investment Company, filed its amended petition in the Circuit Court of Clay County at Liberty, on March 17, 1937, in a cause presumably pending in that court, instituted previously thereto upon an original petition filed therein. The record fails to show any filing of the original petition or the date thereof.

The amended petition is as follows:

"Plaintiff for its cause of action states that it is a corporation duty organized and existing under the laws of the State of Missouri, and for its cause of action against the defendants states that it is the owner of certain personal property in Clay County, Missouri, located on land known as an amusement park and pleasure resort and named Winnwood Beach in Section 6 in Township 50 of Range 32, which personal property is described as follows, to-wit:

"An amusement device known as Mill Chutes or Chute Ride and all machinery and improvements connected therewith; also a certain building known as the Fun House, Honeymoon Trail and Santa Claus Ride, being a frame building and machinery and equipment attached thereto, all of said personal property being now located on real estate owned or claimed to be owned by the defendants herein.

"Plaintiff further states that the defendants are about to tear down, destroy, injure and carry away the personal property hereinabove described without any authority of law and that the damage and injuries to plaintiff will be irreparable and that plaintiff does not have

any adequate remedy at law for the injury which plaintiff will sustain thereby

"Plaintiff further alleges that it has demanded possession of said buildings and assets aforesaid and has attempted to remove the same but defendants refused the demand and wrongfully prevented plaintiff from removing and taking physical possession of said buildings and assets. That defendants have removed a portion of said buildings and assets and wrongfully disposed of the same and have refused and failed to account to plaintiffs therefor.

"Wherefore, plaintiff prays that defendant be ordered to surrender possession of said property of plaintiffs as aforesaid and that plaintiff have judgment against defendants for the reasonable value of such assets as the court finds has been removed and disposed of by defendants and, that a writ of injunction issued from this court, enjoining and restraining the said defendants, their agents, servants and employees from tearing down, destroying and carrying away said personal property, and from interfering in any manner with the possession or title of the plaintiff in and to said personal property and for such other and further relief as to the court shall seem meet and just, and that a temporary injunction be granted to this plaintiff at this time."

The amended petition being duly verified, a temporary injunction as asked therein was ordered, enjoining the defendants, their servants, and agents from tearing down, destroying, and carrying away certain personal property described as follows, to-wit: "An amusement device known as Mill Chutes or Chute Ride and all machinery and improvements connected therewith; also a certain building known as the Fun House, Honeymoon Trail and Santa Claus Ride, being a frame building and machinery and equipment attached thereto," until the further order of the court, upon the plaintiff filing with the clerk a bond in the sum of $400 as required by law.

It appears from the record that such bond was, on March 18, given by the plaintiff, with the Central Surety and Insurance Corporation as surety thereon, and filed on said date in said cause in said court.

The defendants, Frank D. Winn and Mary Winn, filed separate answers, each being a general denial.

Upon the filing of such answers, the plaintiff asked and obtained leave of the court to amend its petition by interlineation at the bottom of the first page and the top of the second page thereof, as follows: "Plaintiff further alleges that it has demanded possession of said buildings and assets aforesaid and has attempted to remove the same but defendants refused the demand and wrongfully prevented plaintiff from removing and taking physical possession of said buildings and assets. That defendants have removed a portion of said build-

ings and assets and wrongfully disposed of the same and have refused and failed to account to plaintiff therefor. That defendants be ordered to surrender possession of said property of plaintiff's as aforesaid and that' plaintiff have judgment against defendants for the reasonable value of such assets as the court finds have been removed and disposed of by defendants and.''

The cause was tried in said court before the Honorable James S. Rooney, the judge thereof, on March 31, 1937, at the March term, 1937, of the court and was submitted to the court upon the pleadings and proof adduced and taken under advisement by the court.

Thereafter, on April 9, 1937, at the March term, 1937, of the court, the court found that there was no equity in the plaintiff's petition and denied the prayer thereof.

Thereupon, the defendants by leave of court filed a motion for the assessment of damages, which was sustained; and damages in favor of the defendants were assessed upon the plaintiff's bond in the sum of $250. Judgment was thereupon ordered and entered that the temporary injunction granted in the cause be dissolved; that the plaintiff's amended petition be dismissed; that the defendants recover of the plaintiff and its surety on the injunction bond the damages assessed by the court, together with their costs; and that they have execution therefor.

Following an unsuccessful motion for a new trial, the plaintiff prosecutes this appeal.

The property involved in this suit appears to have been situated upon certain real estate forming a part of the former Winnwood Beach or Amusement Park in Clay county, originally belonging to Frank D. Winn, one of the defendants herein, and his wife, Geraldine C. Winn. September 10, 1912, they conveyed title by warranty deed to the Winnwood Development Company, a corporation, which latter company leased the premises on which the concessions in question were built to the Winnwood Amusement Company, a corporation.

Thereafter, on November 15, 1927, the Winnwood Development Company executed a deed of trust upon a large block of real estate belonging to it, including the real estate upon which the property in question is situated, to Hal R. Lebrecht, trustee for Edward Aaron, which was duly recorded in Clay county. Thereafter, on March 22, 1928, the Winnwood Amusement Comnpany, the lessee of the Winnwood Development Company above mentioned, sublet part of the premises held by it under its lease to the Winnwood Fun House Company for the construction thereon and for the maintenance and operation of devices known as the ''Fun House,'' ''Honeymoon Trail,'' and ''Santa Claus Ride,'' which sublease was in writing and was acknowledged, and recorded in the office of the recorder of deeds of Clay county.

At about the same time, the Winnwood Amusement Company executed another sublease of a certain portion of the premises held by it under its lease from the Winnwood Development Company to Dorothy L. Arndt and the Wind Chutes Corporation for the construction by the sublessees of an amusement device or concession on said premises to be known as "Mill Chutes."

Thereafter, on December 1, 1928, Winnwood Fun House executed a deed of trust conveying its leasehold estate in the premises subleased to it to R. C. Tucker, trustee for the A. O. Thompson Lumber Company, including all buildings, improvements, fixtures, appliances, devices, and all personal property of every kind and character which were located on said premises at the time or which might thereafter be placed on said premises and used in connection with the operation of its concessions or devices known as "Fun House," "Honeymoon Trail," and "Santa Claus Ride." It was provided in said deed of trust that all of said buildings and appliances included thereon were to be treated as personal property and that the deed of trust executed should, at the option of the holder of the indebtedness thereby, be treated as a chattel mortgage or as a real estate deed of trust.

On January 9, 1930, Dorothy L. Arndt and the Wind Chutes Corporation executed and delivered a trust agreement to Albert Tamm as trustee for designated third parties to secure certain indebtedness to such third parties, covering their leasehold estate in the premises held by them as sublessees and the concessions and amusement devices constructed on such premises by them and all other improvements upon or thereafter erected upon said leased property, with power of sale in said trustee in event of default in the payment of the various indebtednesses secured thereby.

Thereafter, all of the deeds of trust above referred to, including the deed of trust from the Winnwood Development Company to Hal R. Lebrecht, trustee, were foreclosed; and the property conveyed by each was sold; and deeds were delivered to the respective purchasers thereof by the trustee in each of said deeds of trust. The deed of trust from the Winnwood Development Company to Lebrecht, trustee, was foreclosed December 3, 1935; and the property described therein was sold and purchased by one A. L. Taylor, to whom it was conveyed by trustee's deed and from whom the title thereto passed by mesne conveyance to the defendant Mary Winn on June 1, 1936. The deed of trust to Lebrecht, trustee, included in the property conveyed all buildings and improvements then located on the premises which were conveyed thereby or which might from time to time thereafter be constructed or placed thereon or any part thereof, including all fixtures and appliances which were used or which were to be used or which might thereafter be placed on or about said premises as a necessary and useful adjunct to a proper and efficient conduct

of the beach and pleasure resort, located on part of said premises, including also reversionary rights of the grantors therein to any portion of the premises conveyed by reason of any restrictions placed on said premises.

The subleases from the Winnwood Amusement Company to the Winnwood Fun House Company and to Dorothy L. Arndt and the Wind Chutes Corporation provided that the title to all personal property, goods, wares, and merchandise placed in the park by the respective lessees should be and remain in such lessees, their successors, and their assigns, with full right to remove the same at the termination of the leases. Another clause in said leases provided that the lessees should pay all taxes assessed against the concessions or devices constructed upon the leased premises and upon all of the property constituting such devices or concessions and that it was understood that said devices or concessions or all parts thereof, including buildings and structures housing the same, were personal property.

It appears from a stipulation in the record that, in the original lease from the Winnwood Development Company to the Winnwood Amusement Company, above noted, it was provided that all devices and improvements placed on the leased property should remain personal property. It does not appear that said lease was ever put of record in Clay county.

The lease from the fee owner to the Winnwood Amusement Company contained substantially the same provision.

The Mill Chutes or Winnchutes concession or devise consisted of a 100-horse power electric motor set on concrete and bolted down; seven cars built of lumber, about twelve feet long and three wide; a lot of wiring for lights, water cables, and chains for pulling the cars. There was also a large pump and a tunnel or channel structure about five feet square and one hundred and twenty-five to one hundred and fifty feet long covered by a ceiling. The tunnel was built of lumber on an incline, which began at the lake level and extended back from such level to a height at the upper end of seventy-five or one hundred feet. The cars were pulled up this incline, which rested on timbers or lumber set on concrete pillars, supporting it.

The Winnwood Fun House was a building about eighty or ninety feet wide and one hundred feet long, some parts of which were two stories in height and some parts of which were three. This building also housed the Santa Claus Ride concession and joined the Honeymoon Trail on the north, the latter being a structure about eighteen by seventy feet in dimension. These structures housed various amusement devices, such as the barrel roll, about thirty feet long by eight feet wide—a revolving barrel built of timber, set in a frame, a large revolving disk known as the "roulette wheel," set in the floor, mov-

ing platforms, etc., all operated by motors, pulleys, belts, etc., set in concrete under the floor of the Fun House building, which connected with them by pulleys or belts.

At the foreclosure sales under the Arndt and Wind Chutes deed of trust and under the Winnwood Fun House deed of trust, the property sold was purchased by the plaintiff herein, the Real Estate Investment Company; and the interest of the grantors in the respective deeds of trust in the properties covered was conveyed to the plaintiff by trustees' deed by the respective trustees in the said deeds of trust. There is a controversy herein between the plaintiff (who purchased under said deeds of trust) and the defendant Mary Winn (who acquired the title of the purchaser under the deed of trust from the Winnwood Development Company to Lebecht, trustee, for Aaron) with respect to the ownership and title to the properties in question. The 100-horse power electric motor forming a part of the Mill Chutes device had been removed from the premises by the plaintiff prior to the institution of this suit. Other parts of the Mill Chutes device and structure had been removed by the defendants at the time of the trial. The small ticket office used in connection with such device and valued at twenty dollars had been removed. The cables valued at fifty dollars had been removed by the defendants. Also parts of the Winnwood Fun House and of the Santa Claus Ride device and the Honeymoon Trail device had been removed by the defendants at the time of the trial. Several motors used in the operation of such devices, by which the same were operated, located under the floor of the Winnwood Fun House building and resting upon concrete to which they were fastened, valued at one hundred and twenty-five dollars, had been removed, as also had the pulleys, wheels, and belts used in connection with said motors, valued at seventy-five dollars. The Honeymoon Trail, part of the Winnwood Fun House structure, had been torn down and the material stored in the Fun House building which, being overloaded, collapsed. The lumber thus taken was valued at three hundred and fifty dollars. Other items of property, such as the train and track upon which it was operated, were removed from the premises by the plaintiff before the institution of the suit.

In the spring of 1937, the plaintiff went to the premises where the property in suit was situated for the purpose of tearing down and removing its property and found that the defendants had already commenced wrecking operations. The defendants refused to cease from such operations and refused the plaintiff possession of any of the property on said premises claimed by it, whereupon the plaintiff brought this action.

## OPINION.

The plaintiff assigns error on this appeal as follows:

"(Point I.) The court erred to the prejudice of plaintiff in holding that the structures, devices, equipment and operating mechanisms were not personal property.

"(Point II.) The court erred to the prejudice of the plaintiff in decreeing that the leases and recorded deeds of trust gave no force or effect to them as against defendants; and

"That defendant Mary Winn was an innocent purchaser not bound by the recorded deeds of trust and leases; and.

"That the personal property claimed by plaintiff had passed to Mary Winn with the title to the real estate;

"(Point III.) That the trial court erred to the prejudice of plaintiff (appellant) in dissolving the temporary injunction and refusing the relief prayed by plaintiff."

We can only look to the record to ascertain what the court did and the grounds upon which its action was based. Mere assertion in the brief that the grounds of its action were so and so can not, without more, be accepted. [La Rue v. Bloch, 215 Mo. App. 501, 255 S. W. 321; Subscribers at Casualty Reciprocal Exchange by Dodson v. Kansas City Public Service Co., 230 Mo. App. 468, 91 S. W. (2d) 227.]

The court rendered its judgment and finding that there was no equity in the plaintiff's petition and its judgment denying the prayer of such petition and ordering that it be dismissed and the injunction granted be dissolved, in general terms. No particular grounds upon which its finding and judgment were reached are stated in the record.

Under such circumstances, we are called upon only to review the record with the purpose in view of determining whether or not the trial court exercised a wise discretion in making its finding and rendering its judgment or whether it abused its discretion in making such finding and rendering such judgment and, if its discretion be found not to have been wisely exercised, to render such judgment of our own as we find proper.

It is difficult to characterize the nature of the suit brought under any specific name or style, other than that it appears to be an action in equity, addressed to the equitable side of the court and invoking its equitable jurisdiction and injunctive process. It was tried as an equitable action.

In one respect, it seeks to serve the purpose of an action in replevin; in another, to serve the purpose of an action for conversion; and, in another, to serve the purpose of an injunction to restrain a trespass by the defendants upon certain personal property, the title to and ownership of which is claimed to be in the plaintiff, which is

alleged to be located upon real estate owned by or in the possession of the defendants or which is claimed to be owned by them, and to restrain the retention of possession of it by the defendants.

The respective answers of the respective defendants are general denials.

An action in equity cannot be substituted for an action in replevin or for an action for damages in conversion or for trespass or made to serve the purpose of such actions. Such latter actions are actions at law, affording adequate remedies. [Weston v. Fisher, 264 Mo. 250, 180 S. W. 1038; Smith v. Jamison, 91 Mo. 13, 3 S. W. 212.]

While aid may be had in equity, in proper cases, to prevent or avoid a multiplicity of suits, yet such rule does not extend to one having an ordinary right of action in replevin or on account for debt or for damages for conversion or for trespass, so as to permit him to combine such actions into one of an equitable nature and oust the defendant of his rights to trial by jury by throwing him, *nolens volens,* into a court of equity where the trial is by a judge. [Weston v. Fisher, *supra.*]

Where a petition in equity shows upon its face that the plaintiff has an adequate remedy at law, no cause of action is stated; and the plaintiff is not in a position for equitable relief. [Weston v. Fisher, *supra*; Thias v. Siener, 103 Mo. 314, 15 S. W. 772; Benton County v. Morgan, 163 Mo. 661, l. c. 667, 64 S. W. 119; McKee v. Allen, 204 Mo. 655, l. c. 674, 103 S. W. 76; Somerville v. Hellman, 210 Mo. 567, 111 S. W. 35.]

In Schneider v. Johnson, 161 Mo. App. 375, l. c. 383 et seq., 143 S. W. 78, it was held by the Springfield Court of Appeals that a bill in equity for the possession of personal property, where the plaintiff therein had a complete and adequate remedy at law by an action in replevin, could not be maintained; and, in Stevens v. Myers (Mo. App.), 73 S. W. (2d) 334, it was held by this court that, where the plaintiff had a complete and adequate remedy by law, a bill in equity filed by him could not be maintained.

The general rule that an injunction will not be awarded where there is an adequate remedy at law has been applied where there is an adequate remedy by ejectment, replevin, trespass, forcible entry and detainer, a proceeding to establish boundaries, or an action for damages (32 C. J., art. 39, p. 61).

The plaintiff's bill in this case, among other things, prays that the defendants be ordered to surrender to it possession of that portion of the property described in the petition alleged to be in their possession. Such will not be ordinarily decreed in equity by injunction, especially where it is not shown that the plaintiff was in possession and where his right and title is denied.

In Stevens v. Myers, *supra,* l. c. 336 of 73 S. W. (2d), it was held

to be a rule of almost universal application that an injunction will not issue for the taking of property out of the possession of one party and placing it in the possession of another—citing 16 Enc. of Law, art. 9, p. 364; Janney v. Spedden, 38 Mo. 395; Bobb v. Woodward, 42 Mo. 482—and that it is also a general rule that, where the plaintiff is out of possession and claims possession, the court will refuse to interfere by injunction against the defendant in possession under claim of right—citing 22 Enc. of Law and Procedure, art. 3, p. 826. p. 826.

In this case, it appears that the plaintiff is out of possession of the property which it seeks to have transferred to it and its title thereto is denied; and the record does not show that it was ever at any time in possession of it.

In 32 C. J., art. 7½, p. 26, it is said: "Subject to some limitations and exceptions, it is very generally held improper to issue a preliminary injunction, the effect of which will be to compel the transfer of property from the litigant to another, especially where the legal title is in dispute and the party having possession asserts ownership in himself." The limitations and exceptions referred to have been held to be where the plaintiff's prior possession has been invaded and interrupted by the defendant and the possession of the defendant is a mere interruption.

Again, in 1 High on Injunctions, art. 355, p. 355, it is stated to be a general rule that "courts of equity will not interfere by preliminary injunction to change the possession of real property, the title being in dispute, and to transfer it to one whose rights are not yet established at law."

It is apparent from the above quotations that the reason why equity will not by injunctive process transfer the possession of property where the rights of title thereto is in dispute is because it will not try the question of the right of title by injunction, which seems to be the settled law. In order to obtain relief in equity by way of injunctive process, the plaintiff must first establish his right and title, where the same is resisted, by an action at law. [Smith v. Jamison, *supra*; Arnold v. Klepper, 24 Mo. 273; Primm v. White, 162 Mo. App. 594, 142 S. W. 802; Skrinka v. Oertel, 14 Mo. App. 474, 1. c. 479, 480.]

In Smith v. Jamison, supra, which was a suit in which injunctive process was sought and a question of the title to certain lands and mines thereunder was directly involved, it was held that injunction would not lie at the plaintiffs' suit to determine the title where the lands and mines were in the possession of the defendants under claim of right and color of title and that, in order to obtain relief by injunction where their title was denied, it was necessary for the plain-

tiffs first to establish their title by action at law, quoting from 1 High on Injunctions, art. 732.

The controversy in this case revolves around the question of title to the property described in the petition. The plaintiff asserts the title thereto as purchaser at foreclosure sales under two certain deeds of trust executed by certain sublessees of the real estate upon which the same was placed and is now located, purporting to convey the same as personal property, while, upon the other hand, the defendant Mary Winn claims title to the same under a foreclosure sale of a prior deed of trust executed by the owner of the fee in the real estate upon which such property is now located, by which deed of trust it was included as part of the property conveyed along with and as part of the real estate. The claim of title by the defendant Mary Winn to the property in question as part of the real estate brings in question her title to it as part of such real estate, along with the real estate itself, while the title to the property involved as mere personalty is directly brought in question by the plaintiff's claim of ownership and title thereto. The record does not show that the plaintiff at the time of the bringing of the suit or ever at any time prior thereto was in possession of the property involved, as personal property or otherwise.

Under the authorities cited, equity will not entertain its bill for an injunction where the rights of the parties depend upon a determination of the title thereunder. It may be conceded that, under the law, relief may be had by injunctive process by the owner of property against a threatened trespass thereon. However, that can be only in a case where such owner is in possession of the same or where his title thereto is unquestioned. That is not this case.

The plaintiff has an adequate remedy at law for the recovery of the possession of the property involved, if personal property, by an action in replevin in which its character can be determined and in which the plaintiff's right and title thereto can be determined and has an adequate remedy at law in an action for conversion and for recovery of the damages for its property removed, destroyed, and taken by the defendants and for its property retained by the defendants, if personal property, in which its character can be determined and in which the plaintiff's right and title thereto can be determined. The petition does not allege, nor does the record show, that the defendants are insolvent. It cannot therefore maintain this action in equity.

Of course, if the property involved is not personal property but is a part of the real estate upon which it is situated, the plaintiff has no right, claim, or title thereto.

The trial court exercised a wise discretion in dismissing the plaintiff's bill and in dissolving the injunction. From every angle, its judgment was right and proper. Its judgment is therefore affirmed. All concur.