EDLA J. PITMAN, Plaintiff in Error, v. A. T. WEST, et al., Defendant in Error.

Kansas City Court of Appeals, December 31, 1917.

1. **ATTACHMENT: Nonresidence: Bond: Appearance.** Where a defendant is a nonresident an attachment may issue without bond; but if he will enter his appearance and answer, the attachment will be dissolved, *if he so requests.*

2. ———: **Contesting Creditors: Superiority of Lien.** P sued W (a nonresident) by attachment and did not give bond. W answered and entered his appearance and asked that the attachment be dissolved. No action was taken by the court on the request at the time, but about six months thereafter P filed an attachment bond with the clerk and sought to revive or continue the attachment. In the meantime C sued out an attachment against W, gave bond, and had it levied on same land. It was *held* that even if P's attachment could be revived, it would not relate back to the original attachment and thus cut out C's attachment and that C had the prior and superior lien. It was also *held* that when W entered his appearance and answered to P's action and requested that the attachment be dissolved, it became the duty of the court to dissolve it, and such action by W practically did dissolve it so far as to permit C's attachment to become the superior lien.

3. ———: **Appearance: Dissolution.** Where a nonresident defendant is sued by attachment without an attachment bond and the defendant enters his appearance, answers and asks that the attachment be dissolved, though the court does not formally order its dissolution and the cause is continued, yet, if in the meantime another attachment suit is brought by another party and a bond given, it will be adjudged the superior lien.

Error to Atchison Circuit Court.—*Hon. L. D. Ramsey,* Judge.

AFFIRMED.

*Ernest Ross, W. M. Jackson,* and *Vinton Pike* for plaintiff in error.

*Broaddus & Crow* for defendants in error.

ELLISON, P. J.—Edla J. Pitman and the Conway Savings Bank were separate attaching creditors of A. T. West who resided in Iowa, and this proceeding witnesses a contest between them for priority. The matter was finally heard by Hon. GEORGE W. WANAMAKER, Special Judge, and judgment rendered that the bank have priority. Pitman then sued out a writ of error from this court. No exceptions were preserved and we must dispose of the case on the record proper.

Pitman brought his action in the circuit court of Atchison county, Missouri, on the 19th of April, 1915, against West, who was a physician, for malpractice, claiming ten thousand dollars damages. He sued out an attachment on the same day on the ground that West was a nonresident, but did not give bond, and the writ was levied upon certain land in Atchison county on the 24th of April, 1915. On the 8th of the following July, West entered his appearance and filed his answer in vacation consisting of a general denial, and an admission that he was a nonresident of this State, and an allegation that at the time of filing the suit, plaintiff had not given bond, "and therefore asking that the attachment be dissolved and the suit be dismissed."

On the 31st of December thereafter, in vacation, Pitman filed an attachment bond in the cause which was approved by the clerk. The proceedings were in this situation when a term of court opened in the month of January, 1916, with a special Judge presiding, the regular Judge being absent, when, on the 8th of January, the cause came up and was submitted for trial. West was not present, but having appeared to the cause, and the plaintiff waiving a jury, the court heard the evidence and rendered a general judgment for plaintiff for $10,000, but the attachment was not passed on, on account of the

special Judge being counsel for the other creditor claiming priority, and the question of sustaining Pitman's attachment was continued to the following term.

In three days after this judgment was rendered Pitman sued out a general execution thereunder and the sheriff levied generally upon the land and advertised it for sale at the following March term, 1916.

At that March term, held by another special Judge, Pitman filed his motion for judgment sustaining his attachment against the land and that it be made a special lien on the attached land, which, as we have said, had been levied on generally by the sheriff and was to be sold at that term.

The Conway Savings Bank began an attachment suit against West on the 30th of June, 1915, being more than two months subsequent to Pitman's suit. At the time of filing its petition the bank filed an affidavit alleging West's nonresidence and also gave an attachment bond. Its writ of attachment was levied on the same land levied upon by Pitman's execution. It thereafter obtained judgment sustaining its attachment and for its claim, and on the 20th of January, 1916, had a special execution levied upon the land aforesaid by the sheriff, who advertised it for sale on the 8th of March, 1916, at the March term; he, the sheriff, in this way had Pitman's general execution and the bank's special execution, both levied on the land and a sale under each advertised for the 8th of March. The land was sold under the bank's special execution for the sum of $3500, which is the sum involved in the controversy.

At the March term, to which the matter of his attachment had been continued, Pitman filed his motion for a judgment sustaining his attachment and that it be made a special lien upon the property attached. Thereupon the bank filed its motion reciting the matters above set forth, concluding with the following:

"Wherefore the relator (the bank) moves this court to dissolve the attachment in the above entitled cause, and to postpone the lien of the judgment of said Elda J. Pitman to the special lien of attachment of your relator, and for reasons of said motion, states: That

the filing of the answer on July 8, 1915, by operation of law, dissolved the attachment of the plaintiff in the above entitled cause. That there is no authority for filing an attachment bond with the clerk of this court in vacation, after the attachment writ had issued, and such bond is a nullity, and would not revive a lien in favor of plaintiff and even if it had been filed in open court by permission of the Judge, if it created any lien it could only date from December 31, 1915.''

Pitman's and the bank's motions were submitted together and the court granted Pitman's motion sustaining his attachment, but postponed the lien thereof to the lien of the bank's attachment. Pitman, as stated at the outset, then sued out a writ of error from this court.

It is provided by section 2298, Revised Statutes, 1909, that an action by attachment may be brought against a nonresident defendant without giving a bond; but when West filed his answer and entered his appearance to Pitman's action, accompanied by his prayer that the attachment be dissolved, he became entitled, under the proviso to that statute, to have it dissolved. It is ruled by the Supreme Court, in an opinion by Judge BLAIR, that filing an answer and entering appearance alone will not, ipso facto, dissolve the attachment, and to have that effect it should be accompanied by a request or application from the defendant and an order of court. [Donovan v. Gibbs, 268 Mo. 279.] So it is said by Pitman that as the court did not in fact order the attachment dissolved, he could keep it alive in the face of defendant's appearance, by filing a bond, and that he did file a bond. But, as we have said, he did not do so for near six months thereafter when he filed one with the clerk in vacation. Conceding he could so file a bond at that time with the clerk (but not deciding he could) the bank had in the meantime, to-wit the 30th of June, 1915, brought its action and had its attachment levied. In the circumstances we think this had the effect of putting the lien of its attachment ahead of Pitman's which, practically, came into existence (if it did at all) long

afterwards. We say that it practically did not come into existence until after the bank had sued out and levied its attachment, from the fact that by reason of West having entered his appearance and requested that the attachment be dissolved it became the duty of the court "as of course" to dissolve the attachment. The statutory expression, "as of course," meaning when asked by the defendant; and as defendant had complied with every requisite to a dissolution of the attachment, it had the effect of freeing his property so far as to let in a subsequent attaching creditor who had his attachment levied before the prior attaching creditor had taken steps to secure an attachment by giving a bond.

But it is suggested in Pitman's behalf that the court was not authorized by section 2343 Revised Statutes 1909, to adjudge priority to the bank's attachment. That statute reads:

"Where the same property is attached in several actions by different plaintiffs, against the same defendant, the court may settle and determine all controversies which may arise between any of the plaintiffs in relation to the property, and the priority, good faith, force and effect of the different attachments, and may dissolve any attachment, partially or wholly, or postpone it to another, or make such order in the premises as right and justice may require . . . ."

It is said that if Pitman's judgment was merely a general one upon which a general execution was issued, it did not present a case of conflicting attachments. That might be true in law under the actual facts, but, as has been already stated, Pitman sued out an attachment when he filed his petition, and the record in the trial court, as well as this court, shows that he has persisted in his claim that that attachment was superior to the bank's. In the former court, by subsequently filing an attachment bond and endeavoring by motion to maintain his attachment as superior to the bank's by having it sustained as a special lien, and by actually having it sustained, though the court postponed the lien thereof to the lien of the bank; and in this court he has insisted that West did not take any affirm-

ative step at the time of, or after, entering his appearance toward having his (Pitman's) attachment dissolved, it therefore remained alive, (a point we have ruled against him) and the bank had no attachment prior to or superior to his. And on this last suggestion he has cited Stephenson v. Parker Stationery Co., 142 Mo. 13, as authority. That case supports the statute above quoted and is therefore against him. The decision therein was based on a controversy not as to priority of attachments or liens, but a controversy that arose between different creditors growing out of the *manner of the creditor of their respective debts* on which their attachments were based; and the court held that the statute did not authorize that character of contest.

The foregoing considerations lead us to an affirmance of the judgment. All concur.